STATE OF NEW JERSEY, ADMINISTRATIVE OFFICE OF THE COURTS, APPELLANT, v. DOROTHY RICHFORD, DEPARTMENT OF CIVIL SERVICE, AND THE DEPARTMENT OF INSTITUTIONS AND AGENCIES, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 5, 1978—Decided July 21, 1978.

Before Judges FRITZ, ARD and GAULKIN.

*Mrs. Erminie L. Conley,* Deputy Attorney General, argued the cause for appellant (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. William F. Hyland,* former Attorney General of New Jersey; *Mr. Stuart R. Meislik,* Deputy Attorney General, on the brief).

*Mr. Richard H. Greenstein* argued the cause for respondent Dorothy Richford (*Messrs. Fox* and *Fox,* attorneys).

*Mr. John J. Degnan,* Attorney General of New Jersey, filed a statement in lieu of brief on behalf of Civil Service Commission (*Mr. William F. Hyland,* former Attorney General of New Jersey; *Mr. Peter J. Calderone,* Deputy Attorney General, of counsel and on the statement)

The opinion of the court was delivered by

FRITZ, P. J. A. D. This is an appeal by the Administrative Office of the Courts (AOC) from an order of the Civil Service Commission (Commission) directing the AOC to restore Dorothy Richford "to Senior Clerk with permanent status and back pay in Judiciary."

The factual background is complicated and in some areas not completely clear. Enough appears undisputed, however, that we will undertake to determine the matter without remand.

In late 1973 Richford was a tenured civil servant employed by the Department of Human Services (DHS) as a Senior Statistical Clerk. She took and passed an open competitive examination for Senior Clerk Bookkeeper. Having thus qualified for that position and consequently appearing on a

"Certification of Eligibles for Appointment," she moved to the AOC. It is not without some significance that the position of Senior Statistical Clerk did not then (and does not now) exist in the AOC. Richford was employed as a Senior Clerk Bookkeeper, the position for appointment to which she qualified by virtue of the examination.

The working test period (*N. J. S. A.* 11:12–1; *N. J. A. C.* 4:1–13.1) proved unsuccessful and Richford was released. She appealed this separation to the Civil Service Commission.

It is at this point that the record below becomes very fuzzy. It does appear that there was communication between a union representative for Richford and the Commission regarding Richford's rights. As a result, the Commission advised that representative:

* * * [W]e have found in reviewing the request that Mrs. Richford has seniority rights to her former permanent title. Therefore, the appointing authority [the AOC] has been advised that this employee must be immediately reinstated. * * *

The difficulty with this approach was that the position of Richford's "former permanent title," Senior Statistical Clerk, did not exist in the AOC. Undaunted, the Commission wrote the AOC:

We are in receipt of a request for a hearing from Mrs. Dorothy Richford, regarding her termination at the end of the working test period from the position of Senior Clerk Bookkeeper.

In the course of reviewing this request, it has come to our attention that Mrs. Richford transferred to your Department in the RA title of Senior Statistical Clerk. Since she had permanent status when she transferred to your Department she should have been returned to her former RA title when she was terminated from the position of Senior Clerk Bookkeeper.

Please arrange to re-instate this employee without delay. As you do not use the title Senior Statistical Clerk in your agency, Mrs. Richford should be offered a position of Senior Clerk. Should you not have a Senior Clerk vacancy, please notify this office immediately and we will determine the bumping rights of Mrs. Richford.

It is to be remembered that Richford's appeal from her dismissal as a Senior Clerk Bookkeeper was still pending.

We are told by both parties in the briefs before us, without documentation, that attempts were made "to settle the matter." Both parties also agree, although nothing at all appears in the record before us in this respect, that it was settled by the agreement of the AOC to employ Richford "in the same or comparable position she formerly held with the Department of Human Services," in exchange for the "withdrawal of her appeal."[1]

Implementation of such a "settlement" appears from a letter from the Commission to Richford,

The Civil Service Commission, at its meeting on February 4, 1975, was presented your letter of January 22, 1975, withdrawing your appeal from your release at end of working test period, due to unsatisfactory services, from your position of Senior Clerk Bookkeeper, Supreme Court, Department of the Judiciary, effective March 1, 1974.

The Commission directed, therefore, that your appeal be withdrawn and your case removed from the hearing calendar.

Hearing on your appeal, scheduled for January 24, 1975, in Trenton, was cancelled accordingly.

and in the fact that Richford was reemployed by the AOC as a Senior Clerk.

A little more than a month later a letter from the Chief Examiner and Secretary of the Commission to the union representative noted that "it would appear that the terms of the settlement between the parties are now being challenged." There is no indication in the record as to the cause of the unrest.

Whatever the cause, from then on it was downhill. The AOC brief notes, "[T]he settlement failed; respondent renewed her appeal and a Civil Service hearing was held * * *." The Richford brief puts it this way: "For some

---

[1]The quotations in this paragraph are abstracted from both the AOC brief and the Richford brief. The language used is identical in each. We mention this only because we are aware, as noted above, that nothing else appears in the record in this respect.

reason which is not clear, the settlement referred to here-inabove failed, Mrs. Richford again was to be terminated and thus she renewed her appeal to Civil Service."

Richford lost her appeal. The Commission found that "the action of the appointing authority was justified." It affirmed the action of the AOC and dismissed the appeal. On this authority the AOC once again terminated the employment.

At this point Richford again raised before the Commission the question of her "permanent rights." She was advised the issue would be "processed as an administrative appeal."

Thereafter, the Commission handed down the following findings of fact and determination:

1. Dorothy Richford, a Senior Statistical Clerk in the Department of Institutions and Agencies, was appointed from an open competitive list to the position of Senior Clerk Bookkeeper in the Judiciary on October 27, 1973. (The official employee record card lists this move from one department to another as a "transfer".)

2. Judiciary, after a four month working test period, released Mrs. Richford on March 1, 1974. Mrs. Richford appealed this action to Civil Service.

3. A letter from William Druz, then Chief Examiner and Secretary of the Department of Civil Service, dated September 30, 1974, directed the Judiciary to reinstate Mrs. Richford to the comparable position of Senior Clerk.

4. Thereafter, according to the terms of the settlement, Mrs. Richford on January 22, 1975 withdrew her appeal which was granted by the Commission on October 3, 1974. The matter was therefore removed from the calendar on February 4, 1975.

5. Subsequently, following a disagreement between Mrs. Richford and Judiciary, the Commission again granted a hearing on July 29, 1975 to resolve the issue of whether or not Mrs. Richford failed her working test period. The Civil Service Commission as a result of that hearing (held on October 29, 1975) issued a decision of February 17, 1976 affirming the appointing authority's removal at the end of the working test period.

6. Judiciary than [sic] removed Mrs. Richford effective May 7, 1976 relying on the Commission's above decision.

7. The official record reflects the transaction bringing Mrs. Richford to Judiciary as a transfer in title. The CS–21 is dated November 2, 1973 and the CS–22 is dated November 12, 1973.

8. When Mrs. Richford failed her working test period after certification to Senior Clerk Bookkeeper the Chief Examiner and Secretary unequivocally determined on September 30, 1974 that Mrs. Richford enjoyed a right of return to Senior Statistical Clerk. Since no title was available at that point, Mr. Druz ruled that a comparable title should be accorded Mrs. Richford. Nothing which has transpired since that decision has overturned Mr. Druz' rational [*sic*] or his official action.

With respect to the first issue as to whether the working test period was successfully completed, the Commission affirms its previous decision to deny the reopening.

As to the second issue, whether Mrs. Richford has been denied any rights as a result of what was characterized as a "transfer", the Commission concluded that by virtue of the acquiescence by both the appointing authority and Civil Service to a transfer of Mrs. Richford to Judiciary as Senior Statistical Clerk and to the determination by Chief Examiner and Secretary William Druz dated September 30, 1974 that Dorothy Richford should be restored to Senior Clerk with permanent status and back pay in Judiciary.

It is from this order AOC appeals.

The complex and troublesome factual environment in which this matter arrives here can be most easily handled by returning to the beginning and looking at the nature of the movement of Richford from the DHS to the AOC. On the form originating the movement it was described as a transfer. The parties referred to it as a transfer. In fact, Richford in her brief before us still insists it was a transfer. It was this wholly incorrect view, first in the DHS the signature of whose "assenting department head" was required for a transfer (*N. J. S. A.* 11:11–3; *N. J. A. C.* 4:1–15.4(a)), then in the AOC and later implicitly if not expressly in the Civil Service Commission, which produced the difficulties here.

Permanent transfers in the classified state service are governed by statute and rule, and the legislative mandate is strikingly clear: "* * * No person shall be * * * transferred * * * in any manner or by any means other than those prescribed by this subtitle." *N. J. S. A.* 11:4–2.

The Commission is given the authority to approve rules regulating the transfer of employees, *N. J. S. A.*

11:11–3, and it has done so. A permanent transfer is described as "[t]he movement of a permanent employee from a position in one class to a position *in the same class* and at the same rate of compensation in another organization unit." *N. J. A. C.* 4:1–15.1 (emphasis supplied). "Class" is defined in *N. J. S. A.* 11:3–1 as

* * * a group of positions in the classified service, established under this subtitle sufficiently similar in respect to the duties, responsibilities and authority thereof, *that the same title may be used to designate each position allocated to the class,* that the same requirements as to education, experience, capacity, knowledge, proficiency, ability and other qualifications should be required of the incumbents, that the same tests of fitness may be used to choose qualified employees, and that the same schedule of compensation can be made to apply with equity. [Emphasis supplied]

It is readily to be seen that the movement of Richford from her position with DHS as a Senior Statistical Clerk to AOC as a Senior Clerk Bookkeeper in no way qualified as a transfer. That the position was a "substantially similar" one, as argued by Richford here, does not bring it within the command of the statutes or the rules. To treat it as a transfer is to indulge in an illegality. *N. J. S. A.* 11:4–2; see *In re Appeal of Lembo,* 151 *N. J. Super.* 242 (App. Div. 1977).

 That which followed, including the directions of the Commission to the AOC not only to retain the employee but to provide employment in yet a third class, could not vest propriety in that which was from the start improper. We are aware of that of which we are reminded by Richford, that a presumption of reasonableness attaches to the action of an administrative agency. *In re Matter of Public Hearings,* 142 *N. J. Super.* 136, 156 (App. Div. 1976), certif. den. 72 *N. J.* 457 (1976). We are satisfied this presumption rapidly disappears upon a demonstration that the action of the agency was ultra vires, as here.

Without conceding that this was an illegal transfer, Richford contends that the AOC is in any event estopped

by its participation from denying her the relief she has gained below. The complete answer to this contention may be found in *Cipriano v. Civil Service Dep't,* 151 *N. J. Super.* 86 (App. Div. 1977):

> As the court said in *Keenan v. Essex Cty. Freeholders Bd.,* 106 *N. J. Super.* 312, 316 (App. Div. 1969), "[a] governmental body cannot ordinarily be estopped by prior acts that were in violation of law." Where the act in question is utterly beyond the jurisdiction of a public entity and is *ultra vires,* the doctrine of estoppel in the interest of equity and essential justice has no direct application. *Summer Cottagers' Ass'n of Cape May v. City of Cape May, supra,* 19 *N. J.* at 504; *East Orange v. East Orange Bd. of Water Comm'rs,* 73 *N. J. Super.* 440, 464 (Law Div. 1962), aff'd 40 *N. J.* 334 (1963). [At 91]

The Department of Civil Service has adopted rules and regulations to effectuate the constitutional and legislative objective (*N. J. A. C.* Title 4). Included within the statutes and regulations are specific provisions establishing the procedures to be followed and the limits on governmental authority and license. Departure from the procedures outlined in the statutes and regulations may not be authorized on grounds of estoppel. That doctrine is not available to permit disregard of legally established Civil Service procedures. *DeLarmi v. Fort Lee,* 132 *N. J. Super.* 501 (App. Div. 1975), certif. den. 68 *N. J.* 135 (1975).

We are not insensitive to the position in which our reversal of the Commission's order leaves Richford, who had a permanent position with DHS as a Senior Statistical Clerk and whose contribution to this affair seems to be limited to her inability to pass the AOC working test period and her unwillingness to compromise on the settlement about which we know so little. We pause at this point to observe that had the DHS, the AOC and Richford sought to achieve the same result for which they endeavored in the purported transfer, but in the proper manner, Richford's rights might have best been preserved under the provisions of *N. J. S. A.* 11:9–12. We think that, in all the circumstances of this case,

the time limitations of that statute should be relaxed and Richford should be permitted to request reinstatement under the terms of the statute. This way we not only do what should have been done but we accomplish in full, we are certain, precisely what the Legislature intended in a case such as this.

The order of the Commission is set aside except insofar as it affirmed its previous decision to deny a reopening with respect to the working test period, there having been no cross-appeal here by Richford. The matter is remanded to the Commission for further proceedings in accordance with this opinion. Jurisdiction is not retained. No costs.